Elmer D. ABBOTT, Petitioner–Appellee,

v.

Al C. PARKE, Warden,
Respondent–Appellant.

No. 88–6429.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 11, 1989.

Decided Jan. 16, 1990.

Maury D. Kommor (argued), Louisville, Ky., Elmer D. Abbott, LaGrange, Ky., for petitioner-appellee.

Frederic J. Cowan, Atty. Gen., Mark Wintersheimer, Asst. Atty. Gen., William B. Pettus, Asst. Atty. Gen. (argued), Office of the Atty. Gen. of Kentucky, Frankfort, Ky., for respondent-appellant.

Before JONES and NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.[*]

ALAN E. NORRIS, Circuit Judge.

Elmer Abbott was convicted by a Fayette County, Kentucky jury of felony theft and the murder of Donald Turner. Abbott filed a petition for a writ of habeas corpus in the Eastern District of Kentucky. In it he alleged that the police violated his Sixth Amendment rights by taking statements from him in the absence of counsel, after he had requested and been assigned counsel at an arraignment on traffic charges. The district court granted the petition. We reverse since, in view of the overwhelming evidence of Abbott's guilt, any error in admitting the statements was harmless beyond a reasonable doubt.

## I.

On August 28, 1980, Donald Turner was found beaten to death in his apartment in Lexington. Two days earlier, on August 26, Abbott, Turner and Abbott's girlfriend, Mary Ashcraft, were seen entering Turner's apartment.

Ashcraft testified that she and Abbott had been drinking that day; that shortly after arriving at the apartment she fell asleep on a daybed next to the door; that she was awakened by Abbott, who shook her and said they must leave because he had "killed the SB"; and that she observed Turner lying on the couch with blood on his face. Ashcraft and Abbott were seen leaving in the victim's station wagon.

Ashcraft further testified that she and Abbott drove to the courthouse where Abbott met another man with whom he began a conversation. The three returned to Turner's vehicle and, as Abbott attempted to exit his parking place, the station wagon hit a parked vehicle. Seeing the collision, the county sheriff stepped into the street and ordered Abbott to pull the vehicle to the curb. Instead of doing so, Abbott drove away and was apprehended a short time later. He was arrested and charged with driving under the influence, attempting to elude a police officer, and leaving the scene of an accident. When arrested, he was carrying a billfold containing Turner's identification papers. Abbott made an initial appearance in traffic court on August 27, and, upon his request, the court appointed an attorney to represent him.

The next day, Turner was found dead in his apartment; his body bore numerous bruises, cuts, and stab wounds. Upon learning that Abbott had been driving the victim's vehicle when he was arrested, a police detective, during the early evening of August 29, questioned Abbott at the police station about Turner's murder after advising him of his *Miranda* rights. Abbott said he had been drinking with a "bunch of winos," when one of them asked him to drive him, in the wino's station wagon, to Louisville; that he bumped the parked car when leaving and the wino told him to flee; and that the wino soon jumped out of the car, giving Abbott the wallet which he was told contained the papers for

[*] The Honorable Albert J. Engel became Senior Circuit Judge on October 1, 1989.

the car. Later that same night, Abbott gave a second statement to the detective in which he admitted his first one was not true and said that, while drinking, he had met Turner, "Judy Ann," and "Jim"; that they decided to continue drinking at Turner's apartment and drove there in his station wagon; that once there he argued and fought briefly with Turner; that Turner then asked him to use his vehicle to purchase more liquor; that when he returned, Turner asked him to wait in the station wagon; that about thirty minutes later, Judy Ann and Jim got into the vehicle and Jim told him he had knocked Turner out; that Jim handed him the wallet, saying it had the vehicle's papers; and that they then proceeded to the courthouse where the sheriff later attempted to stop them after the collision.

## II.

Following his conviction in state court, Abbott filed a *pro se* habeas corpus petition contending that his convictions had been obtained by the use of a "coerced confession" which was "sweated out" of him by police while he was without the benefit of counsel. The district court construed this to mean that Abbott was complaining that the statements were admitted in violation of his Sixth Amendment right to counsel. Relying upon *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the district court held that since an attorney had been appointed to represent him on the traffic charges, the police were not permitted to question him about Turner's murder outside the presence of his attorney, and the statements were therefore not admissible at trial.

On appeal, Abbott's counsel does not contend that these statements were confessions; instead, it is argued that their introduction cast doubt on his veracity, since the statements related inconsistent stories to support his innocence.

In *Jackson*, and its consolidated case, the defendants requested counsel during an arraignment on charges of murder and conspiracy to commit murder. Subsequent to the arraignment, police initiated further questioning on the charges for which they were arraigned. The defendants waived their right to counsel and gave statements to police. The Court held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police initiated interrogation is invalid," as violative of the Sixth Amendment. 475 U.S. at 636, 106 S.Ct. at 1411.

In *Jackson*, the defendant was asked to "confirm" that he shot the victim after arraignment on the charge of murder and conspiracy to commit murder. In the case consolidated with *Jackson*, the defendant confessed to murder, the charge for which he had previously been arraigned. By contrast, Abbott was arraigned on traffic charges of driving under the influence, attempting to elude the police officer, and leaving the scene of an accident. He was not suspected of Turner's murder until two days after that arraignment, when police learned Abbott had been driving the victim's car when he was apprehended on the traffic charges.

Petitioner contends that a *Jackson* violation occurs whether or not the charges upon which a defendant is arraigned are the same or related to the charges for which he is subsequently questioned. The state maintains that the charges must be the same or related, and that, in any event, *Jackson* should not be given retroactive application. We need not reach either issue, since harmless error analysis is applicable to Sixth Amendment violations which are limited to the erroneous admission of particular evidence at trial. *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988); *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972). A reviewing court should not set aside an otherwise valid conviction if the court can confidently say, on the whole record, that the constitutional error in question was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Two witnesses saw Abbott and Ashcraft enter Turner's apartment in the company

of the victim on August 26. Abbott and Ashcraft were seen driving away from the apartment in Turner's station wagon, without Turner. Ashcraft testified that she was awakened by Abbott who said they had to leave because he had "killed the SB." She then saw Turner lying on the couch with blood on his face. She said she and Abbott left the apartment in Turner's vehicle and drove to the courthouse, where they were seen by the sheriff.

When Abbott was arrested, he was driving Turner's vehicle and carrying his wallet and identification, as well as a paring knife. The pants Abbott was wearing bore a bloodstain of sufficient quantity to determine it was human blood, but insufficient to type the blood.

When Turner's body was found, its left front pants pocket was turned outward and no wallet was recovered. A blue plastic chair was found near the body with a piece chipped from it, and a piece from the chair was recovered from the victim's eyebrow. Abbott's left thumb print was found on the chair. A pathologist testified that Turner's body contained bruises, lacerations, and stab wounds consistent with a battering with a chair and stabbing with a kitchen paring knife.

The testimony of Ms. Ashcraft, corroborated by overwhelming circumstantial evidence, clearly established Abbott's guilt. Once the whole record is viewed, any error that may have been committed in admitting the two statements, was harmless beyond a reasonable doubt.

NATHANIEL R. JONES, Circuit Judge, dissenting.

I respectfully dissent from the opinion because I believe that the denial of Abbott's Sixth Amendment rights was not harmless error.

The majority did not reach the issue of whether admission of the statements made by Abbott violated his Sixth Amendment right to counsel. However, because I feel that the error here was not harmless, I shall decide whether the rule of *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), applies to the instant case. In *Jackson*, the defendants requested counsel during an arraignment for charges of murder. Subsequent to the arraignment, the police initiated further questioning on the charges, and the defendants gave statements to the police. The Supreme Court ruled that after a request for an attorney has been made, any subsequent waiver by a defendant of the right to counsel is invalid as a violation of the Sixth Amendment.

In the instant case, Abbott was arraigned for traffic violations and requested an attorney at that time. Two days later, the police questioned Abbott about his suspected involvement in a murder. On appeal the state contends that the charges must be the same or related for a *Jackson* violation to occur. While there may be circumstances under which the time elapsed and the difference in the subject matter render *Jackson* inapplicable, this is not that case. Here the police questioned Abbott only two days after his arraignment. More importantly, even though the charges were unrelated, the facts from which they both arose were the same. The police first connected Abbott to the murder because he was driving the victim's car and had the victim's wallet and identification papers. Where, as here, the later charges are based on the same subject matter as the initial charges, allowing the interrogation undermines the Sixth Amendment right to rely on counsel as a "medium" between the accused and the state. *Jackson*, 475 U.S. at 632, 106 S.Ct. at 1408–09. In light of these factors, I believe that *Jackson* is applicable and that the admission of Abbott's statements was error.

A reviewing court can allow a conviction to stand if the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). I think that the admission of Abbott's statements was *not* harmless error. The majority is correct in noting that there is substantial evidence in the record to support the guilty verdict, such as Ashcraft's testimony and the fact that Abbott was driving the victim's car. Nevertheless, the admission of Abbott's statements pre-

cluded Abbott from making an effective defense. The statements made by Abbott were contradictory and not believable. They certainly cast doubt on Abbott's veracity and credibility in the minds of the jurors. Without these statements, Abbott possibly could have taken the stand without preconceptions about the truthfulness of his testimony. Thus, I conclude that the decision of the district court granting a new trial should be affirmed.